UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TROLUS PICKETT, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 1205 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TOM DART, Sheriff of Cook County, COOK COUNTY, ILLINOIS, and MANISHA PATEL. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Trolus Pickett brought this suit under 42 U.S.C. § 1983 against Cook County Sheriff Tom Dart, Cook County Jail officials Salvador Godinez and John Mueller, Cermak Medical Director Avery Hart, Cook County Jail medical professionals Dr. Mohamed Mansour and Manisha Patel, and Correction Officer Rubio. Doc. 1. The court dismissed the claims against Dart, Godinez, Hart, and Mueller, but granted Pickett leave to amend. Docs. 5, 11. Pickett filed an amended complaint and then a second amended complaint, which names only Dart, Cook County, and Patel as defendants. Doc. 24. Defendants have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6). Doc. 27. The motion is granted in part and denied in part.

**Background**

In considering the motion to dismiss, the court assumes the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the [second amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Pickett's brief opposing dismissal, so long as those facts "are consistent with the

1

pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Pickett as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

On June 20, 2008, Pickett entered Division 10 of the Cook County Jail, which houses detainees with acute medical conditions. Doc. 24 at ¶ 6. At that time, Pickett discussed his increased risk for diabetes with medical staff. *Id.* at ¶¶ 7-8. Over two years later, in November 2010, Pickett received blood tests and Patel, a physician's assistant, told him that he was a "borderline" diabetic but that he did not need medication. *Id.* at ¶ 9. Pickett saw Patel again in "early 2012" for an unrelated injury and expressed concerns about "significant weight loss" he had recently experienced. *Id.* at ¶ 11. Patel dismissed Pickett's concerns and accused him of "trying to get more food." *Ibid.* In October 2012, Pickett had blood tests that measured his plasma glucose at 358 mg/dL, approximately three times the normal level, and he was diagnosed with diabetes. *Id.* at ¶¶ 12-13. Despite initially receiving prescription diabetes medication and admonitions that he should have his blood glucose monitored regularly, Pickett did not receive medicine, blood testing, or medical attention "for a measurable period of time." *Id.* at ¶ 13.

Pickett filed "numerous grievances regarding the inadequate medical care" he allegedly received. *Id.* at ¶ 14. According to the second amended complaint, "blank grievance forms are not readily available for detainees; the method to submit a grievance requires a detainee … to hand deliver it to a social worker [even though] a social worker may infrequently visit a tier, leaving a detainee without any written procedure to grieve; an employee of Dart or Cook County makes an initial determination whether a detainee grievance proceeds as a 'grievance' or a 'non-grievance (request)'; and there is frequently a significant delay between the date a grievance is written and when a detainee receives a response." *Id.* at ¶ 16. The second amended complaint

references five grievances. *Id*. at ¶ 14. Three of the medical-related grievances attached to Pickett's response brief show twelve, seventeen, and twenty-five day delays between the date he submitted the grievance and the date a social worker received it, and delays of one to two months before Pickett received written responses to the grievances. Doc. 36-1.

Finally, the second amended complaint alleges that Cook County Jail provides Pickett with meals ill-suited for his medical condition. Doc 24 at ¶¶ 10, 20.

## Discussion

### I. Deliberate Indifference Claim Against Patel

Pickett alleges that Patel was deliberately indifferent to his diabetes. "Because [Pickett] was a pretrial detainee, his deliberate-indifference claim arises under the Fourteenth Amendment's Due Process Clause but is governed by the same standards as a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013). "In order to sustain a § 1983 claim for violation of [his] Fourteenth Amendment due process right to adequate medical care, [Pickett] must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Pickett has adequately alleged all three elements.

With respect to the first element: "An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Ibid*. (internal

3

quotation marks and citation omitted). Defendants concede that diabetes can constitute a serious medical condition, *see Oritz v. City of Chicago*, 656 F.3d 523, 532 (7th Cir. 2011), but contend that Pickett's "borderline case" of diabetes was not serious because "a medical professional had previously determined [it] 'did not need to be treated by medication.'" Doc. 27-1 at 8. The contention is without merit. Regardless of whether Pickett's condition was objectively serious in 2010, it had become objectively serious two years later when he complained about significant weight loss during his visit with Patel in early 2012 and about vision loss in late 2012. Doc. 24 at ¶ 11; Doc. 36 at 8. Those are conditions that any lay person would perceive as requiring medical attention, and thus qualify Pickett's diabetes as objectively serious. *See Roe v. Elyea*, 631 F.3d 843, 861-62 & n.15 (7th Cir. 2011) ("our cases demonstrate that a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim" such as "*O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (per curiam) (minor burns resulting from lying in vomit); *Norfleet v. Webster*, 439 F.3d 392, 394-95 (7th Cir. 2006) (arthritis); *Johnson v. Doughty*, 433 F.3d 1001, 1003-04, 1010 (7th Cir. 2006) (hernia); *Greeno v. Daley*, 414 F.3d 645, 649–51 (7th Cir. 2005) (heartburn and vomiting); *Duncan v. Duckworth*, 644 F.2d 653, 654 (7th Cir. 1981) (fractured wrist)"); *Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007) (holding that the alleged injury was objectively serious where the plaintiff alleged that "he severely injured his finger," which "resulted in permanent disfigurement, loss of range of motion, and the infliction of unnecessary pain").

With respect to the second element: "[T]he plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620 (internal quotation marks and citation omitted). Here, Pickett

alleges that Patel refused him treatment on the belief that he wanted more food—in other words, on the belief that Pickett was malingering. The Seventh Circuit has held that the question whether a treatment decision was based "on a good-faith belief that [the prisoner or detainee] was malingering … is an issue for the jury." *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002); *see also Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) ("The possibility that [the defendants] did not do more for [the plaintiff] because they thought he was malingering and did not really have a severe medical need is an issue for the jury."). It follows that Patel, given the circumstances of this case, cannot prevail at the pleadings stage on the second element of Pickett's deliberate indifference claim.

With respect to the third element: "[I]f the plaintiff offers evidence that allows the jury to infer that a delay in treatment harmed an inmate, there is enough causation evidence to reach trial." *McCoy*, 593 F.3d at 624-25. Patel argues that the "link between [the] single meeting [with her] in 'early 2012' and the vision loss which he allegedly suffered by October 2012 is too tenuous to plausibly suggest an affirmative link." Doc. 27-1 at 8-9. Patel cannot prevail on this argument at the pleading stage, as it is at least plausible that treating Pickett's (allegedly) serious condition in early 2012 would have prevented the vision loss that Pickett (allegedly) suffered later that year. *See McCoy*, 593 F.3d at 624 ("Proximate cause is a question to be decided by a jury, and only in the rare instance that a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury should summary judgment be granted on the issue of causation.").

## II. *Monell* Claims Against Cook County and Sheriff Dart

Defendants argued in their initial brief that Pickett's *Monell* claims against Cook County and Dart fail because "a municipality cannot be liable under *Monell* when there is no underlying

5

constitutional violation by a municipal employee." Doc. 27-1 at 9. This argument is wrong for two reasons. First, Pickett has adequately alleged a deliberate indifference claim against Patel. Second, as Defendants recognize in their reply brief, Doc. 37 at 5, "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012).

To state a *Monell* claim, a plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). Pickett pursues the widespread practice approach, alleging that Dart and Cook County Jail "have a wide-spread practice of being deliberately indifferent to inmates with serious or potentially serious medical conditions" and "have a practice of inadequately responding to inmate grievances." Doc. 21 at ¶ 23. As a general rule, a plaintiff pursuing that approach must allege "more than one instance, or even three," of misconduct. *Thomas*, 604 F.3d at 303 (citation omitted); *see also Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Pickett satisfies this approach. Pickett alleges three instances other than his own where Cook County Jail detainees with "serious or potentially serious medical conditions while incarcerated at the Jail" received similarly inadequate treatment. Doc. 24 at ¶ 21; *see Wyatt v. Dart*, 11 C 5353, Doc. 54 at ¶¶ 18-20, 28, 42 (N.D. Ill.) (alleging that the defendants were aware of the plaintiff's severely torn retina but failed to adequately treat it, resulting in blindness); *Harris v. Cook Cnty.*, 13 C 801, Doc. 1 at ¶¶ 8-9, 12 (N.D. Ill.) (alleging that the defendant did not receive "life sustaining medication" for a heart condition that led to cardiac arrest); *Kolak v. Cook County*, 12 C 3955, Doc. 55 at ¶¶ 9, 11-17 (N.D. Ill) (holding that the plaintiff's MSRA, "a flesh eating bacteria," was not adequately treated despite plaintiff's requests). Dart argues those three additional cases "do not satisfy the requirement that [Pickett] bring 'proof of more than one instance of a constitutional deprivation' … particularly where … [the] claims were [not yet] determined to be factually correct." Doc. 27-1 at 14. This argument misunderstands Pickett's burden at the pleading stage. Pickett's allegations regarding the other instances of misconduct need not be proven true at the pleading stage, so long as they plausibly suggest that a widespread practice exists.

Pickett has also sufficiently alleged a widespread pattern or practice of inadequately responding to grievances. Doc. 24 at ¶ 14. Three of the grievances attached to his response brief plausibly show unreasonably lengthy delays of one to two months in the Jail's response to the grievances. Doc. 36-1 at 2-3, 8-9, 11-12. And the second amended complaint alleges similar deficiencies in responses to grievances submitted by other inmates. Doc. 24 at ¶ 21. That is sufficient at the pleading stage to state a viable *Monell* claim.

### III. Diet Claims

Pickett also alleges that he was fed a constitutionally inadequate diet. This claim is duplicative of the inadequate diet claim that Pickett has brought *pro se* in *Pickett v. Cook County*, 13 C 8625 (N.D. Ill.). "As a general rule, a federal suit may be dismissed for reasons of wise judicial administration … whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal quotation marks and alteration omitted); *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) ("Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources. … A district court has an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation.") (internal quotation marks omitted). Pickett cannot recover twice for the same claims in both suits, and the diet claim in his other suit is far better developed than the diet claim in this case. *Compare* Doc. 24 at ¶¶ 10, 20 ("the Jail's 'standard diet' may be nutritionally inadequate"), *with Pickett*, 13 C 8625, Doc. 1 at ¶¶ 9-35 (raising numerous and specific allegations regarding the diet provided by Cook County Jail).

Given the circumstances, wise judicial administration warrants dismissing the diet claim in this case. *See Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000) ("Outright dismissal [rather than a stay] is most likely to be appropriate when, as in *Serlin v. Arthur Andersen & Co.*, … the same party has filed all of the suits."). The dismissal is without prejudice to Pickett pursuing the diet claim in his other case.

### IV. Statute of Limitations

Finally, Defendants argue that the two-year statute of limitations for § 1983 suits in Illinois bars Pickett's claims to the extent they rest on conduct occurring before February 13,

2011, which is two years before this suit was filed. Doc. 27-1 at 4-5; *see Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013). Although "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," acts falling outside the limitations period "will not be time barred so long as all acts which constitute the claim are part of the same unlawful … practice and at least one act falls within the [limitations] period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 (2001); *see also Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011) ("although discussing the continuing violation doctrine in the Title VII context, [*Morgan* ] applies equally to § 1983 cases") (internal quotation marks omitted). It is beyond dispute that some of the (allegedly) actionable conduct occurred within the limitations period. The relationship between the conduct occurring outside the limitations period, if any, and the conduct that occurred within the limitations period cannot be ascertained on the pleadings. It is therefore premature to resolve Defendants' limitations defense on a Rule 12(b)(6) motion. Defendants may raise that defense on summary judgment or at trial.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The inadequate diet claim are dismissed without prejudice. Defendants shall answer the surviving portions of the second amended complaint by March 31, 2014.

March 10, 2014

United States District Judge